FILED
SUPERIOR COURT
OF GUAM

2022 JUN 30 PM 6:28

CLERK OF COURT

BY:_____

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CF0566-21 |
| | ) | GPD Report No.: 21-27613 |
| | ) | |
| vs. | ) | |
| | ) | DECISION AND ORDER |
| AKMAL KHOZHIEV | ) | GRANTING DEFENDANT'S |
| DOB: 07/20/1994 | ) | MOTION FOR INDEPENDENT |
| | ) | PSYCHIATRIST AND CONFIDENTIAL |
| Defendant. | ) | EVALUATION[1] |
| | ) | |

## I.    INTRODUCTION

This matter came before the Honorable Judge Maria T. Cenzon on April 1, 2022 for a hearing on Defendant's Motion for Appointment of Independent Psychiatrist and Confidential Psychiatric Evaluation (the "Motion"). Akmal Khozhiev (the "Defendant") was represented by his counsel, Alternate Public Defender Ana Maria C. Gayle and Assistant Alternate Public Defender Clyde Lemons. The People were represented by Assistant Attorney General Sean Brown. The proceeding was held remotely via Zoom. Both parties fully briefed the Motion (under seal), and the pleadings closed on March 2, 2022.

Following the hearing on the Motion, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001. After reviewing the Parties'

---

[1] The parties' pleadings are filed Under Seal and the Court shall not disrupt the sealed nature of those filings. However, because all court records are open to the public under 7 GCA §7105 unless otherwise provided by law or restricted by special order of this Court, and because all parties are aware of the substance of the Defendant's Motion and substantive grounds on which it is based, the Court finds no compelling interest which would be served by issuing this Decision and Order Under Seal.

written briefs and the record on file with the Court, the arguments presented at the Motion Hearing, and the applicable statutes and case law, the Court now issues this Decision and Order GRANTING Defendant's Motion for the reasons set forth herein.

## II.    BACKGROUND

The Defendant is charged with the following crimes: Aggravated Murder (as a 1st Degree Felony), with the Special Allegation: Deadly Weapon in the Commission of a Felony; and Aggravated Assault (as a 2nd Degree Felony), Special Allegation: Deadly Weapon in the Commission of a Felony. At his arraignment on December 17, 2021, the Defendant placed his mental state at issue and he was ordered to undergo a forensic evaluation as set forth in 9 G.C.A. § 7.25. *Order for Forensic Evaluation* (Dec. 17, 2021).

Defendant was evaluated by Dr. Juan M. Rapadas, Ph.D. ("Dr. Rapadas") on two occasions: January 5, 2022, at the office of Client Services and Family Counseling Division of the court, and via Zoom from the Department of Corrections on January 13, 2022. *Forensic Evaluation* at 2 (Jan. 25, 2022). At the conclusion of the examinations, Dr. Rapadas opined as follows:

1. In my opinion, [Defendant] is currently competent to be proceeded against and competent to be sentenced for reasons spelled out above.

2. In my opinion, [Defendant] appears to be suffering from Bipolar II Disorder, Manic type and Cannabis induced Psychosis (see below), but the mental illnesses did not result in a lack of substantial to know or understand what he was doing, to know or understand that his conduct was wrongful, or to control his actions.

3. In my opinion, while [Defendant] did not meet the test for legal insanity, it is my belief that as a result of his mental illness, he did have diminished capacity that may have impaired and somewhat compromised his judgment and accountability, and may have caused some impulsive behaviors as well as a "rationality impairment" which is consistent with behaviors seen in people with bipolar disorder and

polysubstance abuse disorders. In addition, although the question of any residual brain damage issues has not been answered and it might be prudent to refer him for a neurology study, there does not appear to be substantial evidence of significant neuropsychological impairment seen in [Defendant]. His severe emotional and behavioral problems seem to be more related and due to his cannabis use and the onset of bipolar II disorder. His stabilization with his psychiatric treatment in DOC seems to buttress this assertion.

*Forensic Eval.* at 16.

Dr. Rapadas also reached the following conclusion about Defendant's DSM 5 Diagnosis: Bipolar II Disorder, manic type, moderate to severe; Cannabis Use Disorder, moderate to severe, in partial remission, in a controlled environment; Cannabis-induced psychotic disorder; Rule out Traumatic Brain Injury; Unemployed; Relationship Distress with Spouse; Incarceration in Corrections. *Id.*

While the Defendant does not specifically contend the findings of Dr. Rapadas (with the exception of arguing that Dr. Rapadas's DSM diagnosis is premature), he seeks the Court's order, pursuant to 7 G.C.A. §7.25, for "an independent psychiatrist to assist in his defense as a matter of due process and fundamental fairness." *Def. Mot.* at 3. The gravamen of Defendant's request is that the "neutral" court-appointed forensic psychologist appointed by the court sits as a "fact finder" regarding the important question of whether Defendant is competent to be proceeded against and sentenced, and whether, at the time of the offense, Defendant lacked a substantial capacity to understand what he was doing, to know or understand that his conduct was wrongful or to control his actions. Additionally, Dr. Rapadas found that Defendant had a "diminished capacity that may have impaired and somewhat compromised his judgment and accountability, and may have caused some impulsive behaviors as well as a 'rationality impairment.'" *Forensic Eval.* at 16. This final conclusion goes to the heart of a defense that may

be available to the Defendant; therefore, Defendant seeks an independent psychiatrist "to assist in his defense as a matter of due process and fundamental fairness." *Mot.* at 3.

In addition to seeking the appointment of an independent expert to assist in the preparation of his mental state defense, the Defendant asks the Court to declare that the provisions of 9 GCA § 7.25 compelling Defendant to share the expert's findings with the prosecution violate his due process rights, and further that such findings made on behalf of the Defendant constitute privileged material. *Mot.* at 5 ("communications to a defense psychiatrist have been held to be privileged unless, of course, the defense's expert is called as a witness at trial."). Although the Defendant does not cite to the specific privilege upon which he basis his argument, by reference to *United States v. Alvarez,* 519 F.2d, 1036 (3rd Cir. 1975) in his moving papers, the Court considers whether the privilege discussed in *Alvarez,* the attorney-client privilege, applies in the instant case to bar disclosure under 7.25.[2]

The People oppose the Defendant's Motion, largely on the basis that 9 GCA § 7.25(a) only requires this Court to afford the Defendant "one qualified psychiatrist" and any subsequent appointment is discretionary. The People argue that 9 GCA § 7.25(g)[3] specifically mandates that copies of any report are to be filed with the clerk of court and transmitted to the People, and that "there is nothing that the Court can do to satisfy the Defendant's concern without circumventing controlling Guam law." People's Br. at 1-2.

---

[2] The privilege against self-incrimination which was addressed in *Alvarez* was not raised in the context of Defendant's motion. As such, the Court will not address this specific privilege herein.

[3] The People cited to 9 GCA § 7.25(f) when arguing any report by a psychiatrist should be furnished to the prosecution. People's Br. at 1-2. But section 7.25(f) only requires that "any reports, records, documents or information **furnished by either party to the psychiatrists**" be given to the other party. 9 GCA § 7.25(f) (emphasis added). The Court assumes the People intended to cite 9 GCA § 7.25(g), which more accurately aligns with their position.

## III.  DISCUSSION

**A. 9 G.C.A. § 7.25 sets forth the procedure by which a Defendant places his mental state at issue in defense of criminal charges against him.**

"A defendant is incompetent to be proceeded against in a criminal action if, as a result of mental illness... he is unable (1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense." See 9 G.C.A. § 7.37(a)(1)-(4). An incompetent defendant may not be tried or convicted in a criminal proceeding, *Drope v. Missouri*, 420 U.S. 162, 172 (1975), and this notion is "fundamental to an adversary system of justice, ... [because][c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139-40 (1992) (Kennedy, J., concurring). Competency turns on whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S., at 402 (1960).

In order to uphold this bedrock principle of American jurisprudence, local statutes governing court procedures on competency must be adequate. *Pate v. Robinson*, 383 U.S. 375 (1966) ("[S]tate procedures must be adequate to protect this right."); *See also Hull v. Kyler*, 190 F. 3d 88, 110 (3d Cir. 1999) ("*Pate* . . . required states to provide adequate procedures to ensure that only competent defendants were tried (and convicted)."). Guam's statute governing a

defense based upon defendant's mental illness is codified in 9 GCA § 7.25, and sets forth the applicable procedure as follows (in relevant part):

§ 7.25. Psychiatric Examination and Procedure.

(a) Whenever a plea of not guilty by reason of mental illness, disease or defect is entered or a notice is given under § 7.22, the court shall appoint at least one qualified psychiatrist or other qualified person (hereinafter referred to as psychiatrist) to examine the defendant and to report upon his mental condition.

(b) Whenever, in the opinion of the court, any other expert evidence concerning the defendant's mental condition is, or will be required by the court or either party, the court shall appoint one or more such experts to examine the defendant and to report upon his mental condition as the court may direct.

(c) In addition to the expert witness appointed by the court, either party in a criminal action may retain other psychiatrists or other experts to examine the defendant and to report upon his mental condition. Experts retained pursuant to this Section shall be permitted to have reasonable access to the defendant for the purposes of examination and the giving of testimony.

. . .

(f) Copies of any reports, records, documents or information furnished by either party to the psychiatrists appointed pursuant to this Section shall be given to the other party in the action. Any psychiatrist appointed pursuant to this Section, or retained by either party, shall have the right to inspect and make copies of reports and records relating to the defendant in any facility or institution in which they are located. Compliance with this Section may be required by an appropriate order of the court.

(g) Each psychiatrist appointed by the court who examines the defendant pursuant to this Section shall file a written report with the clerk of the court who shall deliver copies to each party.

9 GCA § 7.25 (a)-(c), (f)-(g).

Defendant does not specifically contend with Dr. Rapadas's findings that the Defendant is competent to be proceeded against, instead he seeks the help of a psychiatric expert

(psychiatrist or psychologist) to assist in and be a part of his defense team, to further evaluate his condition in preparation for trial and to develop and potentially advance his diminished capacity defense. Within this specific context, the Court considers whether, under Section 7.25: (1) Defendant is entitled to an independent mental health expert to assist in the preparation of his defense, and (2) should the Court grant Defendant's request, whether the mandate under Section 7.25(g) requiring Defendant to share, without limitation, its expert's reports with the prosecution violates Defendant's due process rights or his attorney-client privilege.

**B. Defendant is entitled to an independent mental health expert to assist in the preparation of his defense.**

As the People correctly note, Section 7.25(a) provides that when a defendant enters a plea of not guilty by reason of mental illness, disease or defect (referred to herein as "NGRI"), "the court shall appoint *at least one* qualified psychiatrist or other qualified person (hereinafter referred to as psychiatrist) to examine the defendant and to report upon his mental condition." 9 GCA § 7.25(a). Here, the Defendant has been evaluated by "at least one" psychiatrist and his report shared with the People and Defendant. Thus, the People argue, the requirements under Section 7.25(a) have been strictly satisfied and the Court need not grant Defendant's Motion.

Section 7.25(b), however, provides the Court with discretionary authority to "appoint one or more such experts to examine the defendant and to report upon his mental condition *as the court may direct*" when, in the Court's opinion, "such other expert evidence concerning the defendant's mental condition is, or will be required by the court *or either party*." 9 G.C.A. §7.25(b)(emphasis added). The question the Court confronts here is whether, in its opinion, such additional expert is required by the Defendant in order to adequately prepare for his

defense. The short answer to this query is, yes; however, because of the jurisdictional split and the lack of Guam Supreme Court precedent specifically on the issue, the Court's analysis requires some discussion here.

Indigent defendants have faced a sometimes insurmountable burden of overcoming the use of experts in the criminal justice system.[4] This is because the use of experts is expensive, and prosecutors are typically equipped with the full resources of the state while the indigent defendants are routinely denied adequate access to experts.[5]

The United States Supreme Court in *Ake v. Oklahoma*, 105 S. Ct. 1087, 1097 (1985), recognized that, in the interest of fundamental fairness, "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id.* at 1091-1092. Specifically, the state must provide an indigent defendant with access "to a competent psychiatrist who will conduct

---

[4] *See* Jack B. Weinstein, *Science and the Challenges of Expert Testimony in the Courtroom*, 77 Or. L. Rev. 1005, 1008 (1998) ("Courts, as gatekeepers, must be aware of how difficult it can be for some parties – particularly indigent criminal defendants—to obtain an expert to testify. The fact that one side may lack adequate resources with which to fully develop its case is a constant problem."). *See also* Paul C. Giannelli, *Ave v. Oklahoma: The Right to Expert Assistance In a Post- Daubert, Post-DNA World*, Cornell L. Rev. 1305, 1307 (2004) ("While the extensive use of experts raises a number of concerns, one of the most pressing is the accessibility of expert assistance for indigent defendants."); pp. 1307-1312 (noting multiple instances when prosecutors retained expensive and remote expert witnesses while an investigation revealed that "[j]udges routinely deny [defense] lawyers' requests for expert/investigative fees.") (quoting Marcia Coyle et al., *Fatal Defense: Trial and Error in the Nation's Death Belt*, Nat'l L.J., June 11, 1990, at 30). *See also* Roger A. Hanson et al., *Indigent Defenders: Get the Job Done and Done Well* 100 (1992) (stating that in indigent defense systems, the "greatest disparities occur in the areas of investigators and expert witnesses, with prosecutors possessing more resources [than public defenders].").

[5] Giannelli, supra, at 1307-1312 (noting multiple instances when prosecutors retained expensive and remote expert witnesses while an investigation revealed that "[j]udges routinely deny [defense] lawyers' requests for expert/investigative fees.") (quoting Marcia Coyle et al., *Fatal Defense: Trial and Error in the Nation's Death Belt*, Nat'l L.J., June 11, 1990, at 30); *See also* Roger A. Hanson et al., *Indigent Defenders: Get the Job Done and Done Well* 100 (1992) (stating that in indigent defense systems, the "greatest disparities occur in the areas of investigators and expert witnesses, with prosecutors possessing more resources [than public defenders].").

an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake v. Oklahoma*, 105 S. Ct. 1087, 1096 (1985).

This ruling appears, at first glance, to right the ship of inequity in this context. Yet, while the holding in *Ake* appears to compel the Courts to appoint a defense expert in addition to the "one competent psychiatrist" to which a defendant is entitled if a preliminary showing is made, implementing this rule is not as simple, as the Supreme Court has left the process "to the States the decision on how to implement this right." *Id.* at 1094, 1096. To add to the uncertainty, the *Ake* Court discussed its previous ruling in *United States el rel. Smith v. Baldi*, 344 U.S. 561 (1953), where a defendant, despite being examined by two psychiatrists, argued he was entitled to "the assistance of a psychiatrist [which] was necessary to afford him adequate counsel." *Id.* at 568. The Supreme Court ruled therein, rather curtly:

> We cannot say that the State has that duty by constitutional mandate. As we have shown, the issue of petitioner's sanity was heard by the trial court. Psychiatrists testified. That suffices.

*Id.* (citing *McGarty v. O'Brien*, 188 F.2d 151 (1st Cir. 1951)). Yet, despite discussing the shortcomings of *Baldi*, the *Ake* Court did not expressly overrule it.

Thus, some confusion has arisen around *Ake's* true mandate,[7] and the circuits are split as to the issue. The Eleventh circuit holds that *Ake* is satisfied when a psychiatrist examines the Defendant and testifies. *See Magwood v. Smith*, 791 F. 2d 1438, 1443 (11th Cir. 1986) (finding that examination by multiple psychiatrists and their testimony in court was "sufficient

---

[7] *See* David A. Harris, *Ake Revisited: Expert Psychiatric Witnesses Remain Beyond Reach for the Indigent*, 68 N.C. L. Rev. 763, 768, n. 44(1990)("The Court gave mixed signals concerning the psychiatrist's role with regard to a criminal defendant . . . ."); Major Donald H. Dubia, *The Defense Right to Psychiatric Assistance in Light of Ake v. Oklahoma*, 1987 Army Lawyer 15, 19 (Ake "did hot[sic] define clearly the role of the state-supplied psychiatrist.").

psychiatric assistance to satisfy the requirements of *Ake*."); *Clisby v. Jones*, 907 F. 2d 1047, 1050 (11th Cir. 1990) ("The state provided a duly qualified psychiatrist not beholden to the prosecution and, therefore, met its obligation under *Ake*."). The Fifth circuit agrees. *See Granviel v. Lynaugh*, 881 F. 2d 185, 191 (5th Cir. 1989) (finding *Ake* was satisfied "with the [examination] of a court-appointed psychiatrist, whose opinion and testimony was available to both sides . . . ."). In contrast, the Eighth circuit holds that *Ake* requires that an expert has to be appointed *to the Defendant* for purposes of aiding him in trial. *See Starr v. Lockhart*, 23 F. 3d 1280, 1291 (8th Cir. 1994) (finding that just a psychiatrist's examination and testimony was insufficient because "experts appointed under *Ake* are to aid the defendant and function as a 'basic tool' in his or her defense.") (quoting *Ake*, 105 S. Ct. at 1093). The Ninth Circuit has reached a similar conclusion. *See Harris v. Vasquez*, 949 F. 2d 1497 (9th Cir. 1990) (finding that *Ake* was satisfied because the "psychiatrists were available to assist in the preparation of [defendant's] defense strategy.").[8]

Perhaps fortunately, the Supreme Court has recently clarified its ruling in *Ake* by its recent decision in *McWilliams v. Dunn*, 137 S. Ct. 1790, 1798-1800 (2017), which holds that when the threshold questions triggering *Ake* are present (i.e. (1) an indigent defendant, (2) whose mental condition is relevant to the punishment he might suffer, and (3) his sanity at the time of the offense is seriously in question), a State is required to provide a defendant with

---

[8] The People cite to the Ninth Circuit case of *U.S. v. Valtierra*, 467 F.2d 125 (9th Cir. 1972), in support of its position that the Court should deny Defendant's request for a defense psychiatric expert. *Opp. Brief* at 2. However, the court in *Valtierra* disposed of the issue merely by ruling that the defendant failed to show the services were necessary without providing an analysis of its decision. *Valtierra* at 126. The dissenting opinion, on the other hand, found that, based upon the defendant's "long history of severe mental illness" which would have controverted the opinion of the court-appointed expert, another expert should have been appointed "if for no other reason than to enable adequate cross-examination of the court-appointed psychiatrist." *Id.* at p. 126 – 127. Thus, *Valtierra* is inapplicable here.

"access to a competent psychiatrist who will conduct an appropriate [1] *examination* and assist in [2] *evaluation*, [3] *preparation*, and [4] *presentation* of the defense."[9]

Similarly, Defendant in this case asks the Court to find, pursuant to its authority under Section 7.25(b), that he requires the assistance of an independent psychiatric expert "to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony and to assist in preparing the cross-examination of a State's psychiatric witness . . . ." Deft.'s Br. at 4-5. Dr. Rapadas's involvement, as the *neutral*, court-appointed psychiatric expert, whose opinions were to be reported to the court (and to the parties) pursuant to the magistrate judge's Order for Forensic Evaluation simply do not satisfy the requirements under *Ake. See Smith v. McCormick*, 914 F.2d 1153, 1157 (9th Cir. 1990)("The right to psychiatric assistance does not mean the right to place the report of a "neutral" psychiatrist before the court; rather it means the right to use the services of a psychiatrist in whatever capacity defense counsel deems appropriate—including to decide, with the psychiatrist's assistance, not to present to the court particular claims of mental impairment.").[10] Importantly, under the Order, the trial court, not the defendant, dictates the manner in which the court appointed expert, Dr. Rapadas, conducted the evaluation.

---

[9] It is noteworthy to mention, however, that SCOTUS itself was split in its decision in *Dunn*, with a majority including Justices Breyer, Kennedy, Ginsburg, Sotomayor and Kagan. The dissenting opinion was authored by Associate Justice Alito, joined by Chief Justice Roberts and Associate Justices Thomas and Gorsuch.

[10] As the 7th Circuit observed, under *Ake*,

> The independent psychiatric expert performs three functions which may be crucial in cases where mental health is a substantial issue. First, the expert can aid a defendant in determining whether a defense based on mental condition is warranted by the defendant's particular circumstances. Second, the expert can coherently present to the jury his or her observations of the defendant, as well as his or her understanding of the defendant's mental history, and explain to the jury how those observations and that history are relevant to the defendant's mental condition. Finally, the expert can "assist in preparing the cross-examination" of psychiatric experts retained by the government.

Id. quoting *United States v. Fazzini*, 871 F.2d 635, 637 (7th Cir.1989), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989) (citations omitted).

Considering the processes set forth in *Ake* and *Dunn,* the Court also finds guidance in the recent Guam Supreme Court case of *People v. Quitugua,* 2021 Guam 20. While *Quitugua* addressed specifically the *ex parte* nature of a Defendant's request for an expert witness and did not consider Section 7.25 in its Opinion, the rationale applied by the Guam Supreme Court therein applies analogously here. In *Quitugua,* the Supreme Court granted interlocutory appeal in order to address the question of whether a Defendant may employ the *ex parte* process in seeking the appointment of a defense expert at the expense of the government. Although *Quitugua* held that a Defendant may avail of the protections against disclosure of the specific reasons it seeks expert assistance in an *ex parte* proceeding, the Guam Supreme Court, in so ruling, stated that "[e]ffective assistance of counsel includes the right to access expert witnesses." *Quitugua* ¶ 16.

Thus, on the principles and mandates set forth in *Ake, Dunn* and *Quitugua,* and other persuasive authority, the Court finds that Defendant is entitled to the appointment of an independent psychiatric expert to assist him in the preparation of his defense, pursuant to Section 7.25(b), and in a manner that Defendant sees fit in such preparation.[11]

## C. Defendant's independent psychiatric expert reports shall remain confidential unless used at trial or other order of the Court.

In addition to the appointment of an independent psychiatric expert, the Defendant argues that the requirement to surrender the expert's reports under 7.25(g) violates his due process rights. Specifically, Section 7.25(g) requires that reports of an expert appointed under 7.25 must be provided to the other party (i.e., the party for whom the expert is *not* appointed):

---

[11] *See also, Dunn,* 137 S. Ct. at 1800 ("[a]s a practical matter, the simplest way for a state to meet [the *Ake*] standard may be to provide a qualified expert retained *specifically for the defense team.*") (emphasis added).

(g) Each psychiatrist *appointed by the court* who examines the defendant pursuant to this Section shall file a written report with the clerk of the court *who shall deliver copies to each party.*

9 GCA § 7.25 (f)-(g)(emphasis added).

The Defendant argues that his due process rights are violated by the requirement that he surrender to the clerk of court "who shall deliver copies to [the prosecution]" the reports of his independent psychiatric expert appointed to assist him in preparing for his defense. *See* Deft.'s Br. at 5. As discussed herein, the Court agrees.

### 1. The automatic disclosure of an indigent defendant's independent expert reports violates due process.

The People argue that "there is nothing that the Court can do to satisfy the Defendant's concern [regarding disclosure of defense expert's reports] without circumventing controlling Guam law" and cites to the mandatory language ("shall") of 9 GCA § 7.25(f). The Court notes first that Section 7.25(f) addresses reports which are furnished *by* either party *to* the psychiatrists and requires that the party furnishing the reports to the psychiatrist also provide a copy to the opposing party. That is not the contention here. Rather, the relevant section is 7.25(g) which essentially requires *only indigent defendants whose independent experts appointed by the Court pursuant to Section 7.25(b)* to file a written report with the clerk of court for dissemination to the parties. If the Defendant had the financial means to secure his own independent psychiatric experts without the necessity of a court order, defendant's expert would not be subject to the same filing requirements. This is the crux of the Defendant's complaint as to the automatic disclosure under 7.25(g).

In addition to the language of 7.25, the People cite to the Ninth Circuit case of *Pawlyk v. Wood,* 248 F. 3d 815 (9th Cir. 2001) in support of their argument mandating disclosure. However, the trial courts are compelled to follow the opinions of the Guam Supreme Court, which are controlling. This Court finds that the Guam Supreme Court's ruling in *People v. Quitugua, supra,* require this Court to find that the disclosure of defendant's expert reports as required under 7.25(g) violate due process.

In *Quitugua,* the territory's High Court addressed the inequity resulting from requiring an indigent defendant to disclose in other than an *ex parte* hearing the substantive reasons for seeking expert assistance. The Supreme Court ruled that *"[e]x parte* hearings protect indigent defendants' privilege against self-incrimination, prevent the premature disclosure of a defense strategy, and preserve the right to effective assistance of counsel." *Id.* at ¶ 13 (citations omitted). Moreover, "seeking expert assistance may require the defendant to reveal a high degree of detail about their rationale, such as the strengths and weaknesses of their case, trial strategy, potential defenses, witnesses, and evidence that may be used against the defendant at trial." *Id.* at ¶ 14 (citations omitted). The Supreme Court further held:

> Ex parte hearings aid the prevention of unequal treatment of indigent and non-indigent defendants. See *Ex parte Lexington Cnty.*, 442 S.E.2d 589, 594 (S.C. 1994); see also *McGregor v. State*, 733 P.2d 416, 416-17 (Okla. Crim. App. 1987) ("[T]o allow participation, or even presence, by the State would thwart the Supreme Court's attempt to place indigent defendants, as nearly as possible, on a level of equality with nonindigent defendants."). *A public hearing on an indigent defendant's request for expert funding may cause an inherently discriminatory practice, as a non-indigent defendant need not present their request to hire an expert to the public or opposing counsel.* See *Ex parte Moody*, 684 So. 2d at 120 ("An indigent defendant should not have to disclose to the state information that a financially secure defendant would not have to disclose."); *People v. Loyer*, 425 N.W.2d 714, 722 (Mich. Ct. App. 1988); *Ex parte Lexington Cnty.*, 442 S.E.2d at 594; *Barnett*, 909 S.W.2d at 428-29; see also *United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir. 1973).

*People v. Quitugua*, 2021 Guam 20, ¶ 17 (emphasis added).

Applying the Guam Supreme Court's rationale in *Quitugua,* by analogy here, an indigent defendant who has had to seek the trial court's authority under 7.25 to retain the services of an independent psychiatric expert because he cannot afford to pay for one should not be treated inherently different from a non-indigent defendant "who need not present their [report] to the public or opposing counsel."[12]

### 2. Absent any due process violation under 7.25(g), the attorney-client privilege also protects the defendant's independent expert's report from automatic disclosure.

Secondarily, the Defendant claims the report is protected by privilege but fails to mention the exact privilege that would afford him such protection. *See* Deft.'s Br. at 5. By its own conjecture, the Court can fathom up to two apparent privileges upon which such a protection might exist: the attorney-client privilege and the Fifth Amendment privilege against self-incrimination. The Defendant has not asserted any violation of his right against self-incrimination in his moving papers, so the Court assesses only whether the attorney-client privilege protects the defendant's mental health expert's report(s).

The attorney-client privilege is recognized in Rule 504(c) of Guam's Rules of Evidence (GRE). The GRE extends the scope of privileges as they are regularly recognized in common law. *See* 504 GRE Comment ("The FRE do not establish particular privileges, leaving it to the determination of the courts. The Committee has seen fit to set forth the particular principles

---

[12] The SCOTUS has suggested that such arbitrary variances run afoul of the Constitution. See *Smith v. Bennett*, 81 S. Ct. 895, 898 (1961) ("Respecting the State's grant of a right to test their detention, the Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale, and its hands extends as far to each."); *Griffin v. Illinois*, 76 S.Ct. 585, 591 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.").

recognized under Guam Law without limiting the ability of the courts to recognize other privileges based upon the principles of common law."). As a widely-recognized principle of common law, Guam's attorney-client privilege extends to "persons assisting the lawyer in the rendition of legal services." [16] *See also In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 325 (S.D. N.Y. 2003) (citing Joseph M. McLaughlin, Weinstein's Evidence § 503.01 (2d ed. 2003) (privilege extends to appropriate communications between and among the client, the lawyer, and a "representative of the lawyer," which is defined as "one employed to assist the lawyer in the rendition of professional legal services."); *See also People v. Jesus*, 2009 Guam 2 n. 8. ("The Guam Rules of Evidence are essentially identical to its like-numbered counterparts in the Federal Rules of Evidence. Therefore interpretations of the Federal Rules of Evidence from other jurisdictions are persuasive authority.").

The People ask the Court to apply the Ninth Circuit's ruling in *Pawlyk v. Wood*, 248 F.3d 815 (9th Cir. 2001) to find disclosure mandatory. *Pawlyk* held that the reports from psychiatrists are not protected under the attorney-client privilege because the defendant waived them when he put his mental state at issue. *Pawlyk*, 248 F. 3d at 825. The court's reasoning therein was founded partly upon the determination that "a defendant's communication to a

---

[16] *See Audi of America, Inc. v. Bronsberg & Hughes Pontiac, Inc.*, (M.D. Pa. 2017)(" Courts in Pennsylvania and elsewhere routinely rely upon this rule to uphold privilege claims involving agents of the client."); *See also State v. Blacknall*, 760 A. 2d 1151, 1153 (N.J. Super. Ct. Law Div. 2000) ("In New Jersey, the privilege has been extended to any person who is or may be the agent of either the attorney or the client."); *In re Fundamental Long Term Car, Inc.*, 489 B.R. 451, 469 (Bankr. M.D. Fla 2013) ("But there is no question that the attorney-client privilege extends not only to the lawyer giving advice but to any persons assisting the lawyer in providing legal services."); *Baylor v. Mitchell Rubenstein & Assoc.'s, P.C.*, 130 F. Supp. 3d 326, 331 (D.C. Cir. 2015) ("Both Maryland and the District of Columbia recognize that the attorney-client privilege protects communications not only between a client and an attorney, but also between their agents.").

psychiatrist regarding his mental status is often the only meaningful evidence available to either the prosecution or the defendant regarding the defendant's mental state." *Id. Pawlyk* is distinguishable from the case at bar, however. Specifically, the People currently have the reports of Dr. Rapadas as well as the reports from Guam Behavioral Health and Wellness Center. This was not the case in *Pawlyk.* People's Br. at 2.[17] Moreover, should the Defendant's independent psychiatric expert be called to testify at trial, the Defendant would be required to disclose these reports to the People, which Defendant acknowledges. *See* Deft.'s Reply. Br. at 4 ("Simply stated, if the Defendant calls an expert to testify about any issue regarding the defendant's competency or lack thereof, the People are entitled to the expert's report."); *See also United States v. Alvarez*, 519 F. 2d 1036, 1046-47 (3d Cir. 1975) (stating that defendant's psychiatrists disclosures to attorney are privileged "at least until he is placed on the witness stand."); *Pouncy v. State*, 353 So. 2d 640, 642 (Fla. Dist. Ct. App. 1977) (finding the attorney client privilege for defendant's psychiatrists not waived where defense did not call them as witnesses). Thus, automatic disclosure at this time lends nothing to the prosecution and creates due process problems for the Defendant.

It is noteable that few jurisdictions join *Pawlyk,* and, more importantly, the cases which have joined *Pawlyk* in declining to extend the attorney-client privilege to a defendant's psychiatrist are unpersuasive because their reasoning is inapplicable to Guam, as their statutory authority differs from Section 7.25.[18] In contrast, a greater number of jurisdictions have found

---

[17] While the People were arguing the Defendant has access to these reports, they too have access to at least these reports since Dr. Rapadas' report was previously furnished to them pursuant to 9 GCA § 7.25(g) and the Defendant attached Dr. Fergurgur's report to their Motion as Exhibit A.

[18] E.g., in *Gray v. District Court of Eleventh Judicial Dist.*, 884 P.2d 286 (Colo. 1994), defendant's psychiatric evaluations were not protected by the attorney-client privilege after the Colorado legislature amended their attorney-

that the attorney-client privilege extends to a defendant's communications with a non-testifying psychiatric expert. *See People v. Knuckles*, 650 N.E. 2d 974, 983 (Ill. 1995) (finding that the attorney-client privilege protects the reports from the defendant's psychiatric expert from disclosure and "that the privilege is not waived merely by the assertion of defenses which place the defendant's mental condition in issue."); *Neuman v. State*, 773 S.E. 2d 716 (Ga. 2015) (finding that attorney-client privilege extended to two psychologists retained by the defendant on an insanity defense unless they testified); *State v. Hitopoulus*, 309 S.E. 2d 747, 749 (S.C. 1983) (finding that "the attorney-client privilege extends to [defendant's] communications to the psychiatrist employed by his attorney to aid in preparation of his defense."); *Houston v. State*, 602 P. 2d 784 (Alaska 1979) (finding that the psychiatrist's "examination of appellant comes within Alaska's attorney-client privilege."); *State v. Pratt*, 398 A. 2d 421, 424 (Md. 1979) (finding that a psychiatrist working with the defense team in preparing an insanity defense was "protected within the scope of the attorney-client privilege."); *People v. Lines*, 531 P. 2d 793, 800 (Cal. 1975) (affirming a previous holding that "when communications by a client to his attorney regarding his physical or mental condition require the assistance of a physician to interpret the client's condition to the attorney, the information obtained by the physician as a

client privilege rule to read that "[a] defendant who places his mental condition at issue by pleading not guilty by reason of insanity . . . waives any claim of confidentiality or privilege as to communications . . . ." § Co. St. 13-90-107(3)(1987). Before the enactment of the amended statute, the Supreme Court of Colorado recognized the attorney-client privilege to protect the reports drafted by a defendant's psychiatrist. See *Miller v. District Court*, 737 P. 2d 834 (Colo. 1987). Similarly, the Montana Supreme Court in *State v. Carter*, 641 S. W. 2d 54 (Mo. 1982) refused to recognize any privilege between a Defendant and his psychiatrist because the state's privilege statue explicitly limited the attorney-client privilege to just the client and the attorney. *Miller* and *Carter* are both inapplicable here because Guam has neither enacted a statute explicitly waiving the attorney-client privilege for a defendant who pleads not guilty because of insanity nor has it explicitly limited the attorney-client privilege between just the attorney and the client.

result remains protected from disclosure even if the clients places his physical or mental condition in issue.").

The Guam Supreme Court has yet to address the question of an indigent defendant's right against the automatic disclosure of his independent psychiatric expert's written report, or, more aptly stated, whether Section 7.25(g) violates an indigent defendant's due process rights by the discriminatory requirement of disclosure, which does not apply to a non-indigent defendant. In lieu of any mandatory guidance, the Court turns to other jurisdictions for persuasive guidance, including those cited herein.

The automatic disclosure of the report(s) from the Defendant's independent psychiatric expert under 7.25(g) would be patently unfair in this case. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Since the attorney-client privilege extends to the Defendant's communications with his psychiatric expert, the same purpose applies here. The defense expert's ability to uncover the reality concerning defendant's sanity defense could very well be diminished if the Defendant hesitates to be frank with his expert in fear that his own words could then be used against him by the prosecution. *See, Parkinson v. Gogue*, 1986 WL 68928 at *2 (D. Guam July 7, 1986).

The Court finds overwhelming the concerns respecting the violation of Defendant's due process rights under the disclosure requirements of 7.25(g), a provision which was enacted in 1968 and which has not been amended to reflect decisions including those of *Ake, Dunn* and

subsequent Guam cases.[19] As such, the Court adopts the views held by a vast majority of jurisdictions as discussed herein. The reports of any independent psychiatric expert appointed by the Court pursuant to 7.25(a) and who aids the Defendant in preparing for his defense are not subject to automatic disclosure pursuant to the provisions of 7.25(g) as attorney-client privileged material. Instead, any disclosure remains subject to the GRE and the applicable common law principles of disclosure or order of this Court.

## IV.  CONCLUSION

For the reasons set forth herein, the Court GRANTS Defendant's Motion to Appoint an Independent Psychiatric Expert to assist the Defendant in the preparation of his defense. The Defendant shall identify the psychiatric expert within thirty (30) days of the issuance of this Decision and Order, which time shall not be extended absent good cause, and further, shall seek the Court's approval of such expert by submitting a Proposed Order identifying the expert, who shall be appointed at the expense of the court, pursuant to 7.25(b) and MR 1.1.4.

IT IS FURTHER ORDERED that any report made by the psychiatric expert appointed herein is not subject to automatic disclosure under 7.25(g); however, the Defendant is placed on notice that the Court may determine disclosure to be appropriate upon consideration of any future motion by the People for such disclosure founded upon applicable rule or law.

SO ORDERED this **JUN 3 0 2022**

SERVICE VIA EMAIL
I acknowledge that an electronic
copy of the original was e-mailed to:

Aris S. Dyson
APD - A. Gayle
Date: 6/30 Time: 6:25p
Deputy Clerk, Superior Court of Guam

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam

---

[19] 9 G.C.A. § 7.25, cited Source: M.P.C. §§ 4.05, 4.07 (3) & (4); *Cal. § 533 (T.D. 2 1968); See Mass. ch. 263, §§ 27, 29 & 31; N.J. § 2C:4–5; 2C:4–7 (d) & (e).